IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| SANDRA K. WILLIAMS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL NO. 2:11cv639 |
| | : |
| OCEAN BEACH CLUB, LLC, | : |
| d/b/a Gold Key Resorts, | : |
| | : |
| Defendant. | : |

## OPINION AND ORDER

Plaintiff Sandra K. Williams ("Williams") claims Defendant Gold Key Resorts ("Gold Key" or the "Company"), fired her in retaliation for complaining about sexual harassment by her supervisor. Gold Key moved for summary judgment arguing that undisputed facts establish her internal complaint was not protected activity under Title VII, and that legitimate attendance issues led to her termination. This Opinion finds that no reasonable person could conclude the conduct Williams complained of was made unlawful by Title VII, and as a result her complaint is not protected activity sufficient to invoke the statute's retaliation protection. In addition, Williams has failed to introduce facts sufficient to suggest that the Company's legitimate explanation for her firing is pretextual. Accordingly, the Court will GRANT Gold Key's Motion for Summary Judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Gold Key manages timeshare resorts in Virginia Beach. Williams worked for Gold Key as an in-house sales associate from 2004 to April 2006. She left the Company, but returned to the same position on July 30, 2007. Her claim in this Court relates solely to her treatment by the Company after her rehire.

1

On August 28, 2007, while in the office of Gold Key, Williams' supervisor, Robert Griffin, slapped her on the buttocks, apparently in celebration of her closing a particularly difficult sale. (Williams Dep., ECF No. 17-2, pp. 24-25). Williams had never had any previous difficulties with Griffin. (Williams Dep., p. 24). She testified that Griffin had never spoken to her or touched her inappropriately before, nor had she ever witnessed Griffin behaving inappropriately towards others. (Williams Dep., pp. 23-24, 26). She also stated that she did not believe the slap was sexual in nature, nor did she believe Griffin was trying to physically harm her. (Williams Dep., p. 33).

Nonetheless, Williams stated in a note to Gold Key managers that she was offended and embarrassed by the slap, which she also claimed left a "hand print". (ECF No. 21-1). Despite her admission that the slap was not sexual in nature, she also testified by deposition that she did not believe Griffin would have slapped a man in the same way. When asked to explain why, she offered only that a man probably would "have slapped him back." (Williams Dep., p. 27).

After reporting the incident, Williams met with Gold Key Vice President Mary Reinhardt. Reinhardt advised Gold Key's Director of Human Resources, David Finwall, who investigated for the Company. (ECF No. 21-6). Finwall summarized the results of his investigation in a letter to Williams. The letter stressed the Company's commitment to enforcing its sexual harassment policy, but concluded that Griffin's conduct, while inappropriate, was "not actionable." The Company did, however, admonish Griffin, who had admitted to "patting" Williams on her "lower back," after she closed a particularly difficult sale. (ECF No. 21-6).

During the week following Williams' report, Finwall and Reinhardt exchanged several emails discussing Williams and her involvement with a Gold Key co-worker, Pam DePaoli. (ECF No. 21-5; 21-7). In the emails Reinhardt expressed her concern that Williams was meeting

with DePaoli. Reinhardt also wrote a memo to the file expressing concern that DePaoli may be encouraging Williams to "get ammunition" against the Company in case they "ever tried to get rid of her." (ECF No. 21-2). Finwall, by email, shared his concern that "employees [presumably Williams] are being coached how to cause issues for the employer."[1] (ECF No. 22-1, p. 3). Reinhardt's note to the file also expressed skepticism concerning Williams' motivation for reporting Griffin's slap, and observed that the written complaint differed sharply from Williams' in-person description. (ECF No. 21-2). The written complaint claims that "[o]n many occasions [Griffin] had slapped my butt lightly and grab (sic) at me." (ECF No. 21-1). In her meetings with management, and her deposition testimony, however, Williams described only the August 28 incident and expressly denied any other instances of inappropriate behavior. In fact, she stated she did not have any problems working with Griffin, and did not want to see him disciplined. (ECF No. 21-2). She stated that she reported the conduct only to ensure that "nobody would get in trouble." (Williams Dep., p. 35).

In addition to her handwritten internal complaint about Griffin's slap, Williams also filed a charge of discrimination with the EEOC. She met with the EEOC for the first time on October 24, 2007, but the Company did not receive the charge of discrimination until November 30, 2007. (Williams Dep., pp. 55-56; Reinhardt Dec., ECF No. 17-1, ¶ 27). Accordingly, the Company had no notice of her charge of discrimination prior to firing her on November 8, 2007.

Reinhardt began monitoring Williams' attendance before she received Williams' report of the August 28 incident. She emailed Griffin about concerns over Williams' attendance and instructed her staff to monitor Williams' work schedule. (Reinhardt Supp. Dec., ECF No. 22-1, pp. 1, 4). Company policy required employees who were not scheduled to be off to call at least

---

[1] Though it is not developed in the Summary Judgment record, Williams' counsel stated during oral argument that Reinhardt was concerned because DePaoli had previously sued a different employer under Title VII.

3

two hours before their shift to explain any unscheduled absence. (ECF No. 17-1, p. 7). Williams missed work, or left early on a few days in October, but the absence underlying her firing occurred at the end of that month. Williams testified that she was scheduled to undergo surgery, which would cause her to miss work for a period of time. The condition to be corrected by the surgery was also causing her pain which occasionally precluded her from working, or required her to leave early. The record contains a note from Williams' physician suggesting that she should be excused from work from October 24 to November 4, but it is undisputed that this note was never presented to Gold Key. (ECF No. 21-19; Williams Dep., p. 47). Instead, Williams did work on October 25 and 27. She missed work on October 29 and 30, but then telephoned to inquire whether she could work during a special "road show weekend" beginning November 3. (Williams Dep., p. 52). Advised that she could not work the road show as a result of her failure to attend work the week prior, Williams told Griffin she expected to be back at work Monday, November 5. (Williams Dep., p. 51; Reinhardt Dec., ECF No. 17-1, ¶ 24). She did not appear for work on that date, or for the next three days. In addition, she failed to call in or report her absence, which in the view of the Company, was unexcused. She was fired on November 8, 2007. (Reinhardt Dec., ECF No. 17-1, ¶¶ 25-26).

Although Reinhardt testified that Williams was expected back at work on November 5, Williams' testimony on this issue was less definitive. She acknowledged having told Griffin she expected to return the Monday following the road show, but also stated that Griffin had assured her she could return whenever she felt able. (Williams Dep., p. 51). She said Griffin told her "not to worry," but to get well and bring her note when she returned. (Williams Dep., pp. 53-54). For his part, Griffin did not recall the specifics of the conversation. He acknowledged, hypothetically, that he may have encouraged an ill employee to "get well and bring a doctor's

4

note." (Griffin Dep., p. 18). However, he also remembered Williams told him she did not have the surgery as scheduled, and that Reinhardt had been concerned about Williams' attendance. (Griffin Dep., pp. 39-41). Though not explicit in her testimony, Williams now argues this communication with Griffin effectively released her from the obligation to advise the Company of her November 5 – 8 absences. Reinhardt's testimony that she expected Williams back on November 5, was not disputed by either Williams or Griffin. (Reinhardt Dec., ¶ 24).

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); See Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III. ANALYSIS

For Williams to succeed on her claim of retaliation she must plead and prove three elements. She must establish that she engaged in protected activity; that after the protected activity, the Company took adverse employment action against her; and finally, that there is a causal link between the protected activity and the Company's adverse employment action. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004). Protected activity falls into two categories, opposition and participation. Cumbie v. Gen. Shale Brick, Inc., 302 F. App'x 192, 194 (unpublished) (4th Cir. 2008) (citing Laughlin v. Metro Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998)). Opposition generally involves internal reporting, including grievance procedures, informal protests and general opposition to an employer's allegedly discriminatory conduct. Laughlin, 149 F.3d at 259 (citing Armstrong Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981)). Participation includes making a charge, testifying, assisting or participating in an investigation, proceeding, or hearing under Title VII. Cumbie, 302 F. App'x at 194.

Title VII bars retaliation against employees who oppose any employment practice made unlawful by the Act, as well as actions that an employee "reasonably believes [to be] unlawful." Jordan v. Alt. Res. Corp., 458 F.3d 332, 338 (4th Cir. 2006) (emphasis omitted); 42 U.S.C. § 2000e-3. As a result, a party that reasonably, but incorrectly, believes that the conduct she

opposed was unlawful engages in protected activity for purposes of Title VII. Hart v. Cmty. Grp., Inc., 3:08cv175 (unpublished), 2008 WL 1924031, at *3 (E.D.Va. April 28, 2008) (citing Darveau v. Detecon, Inc., 515 F.3d 334, 340-41 (4th Cir. 2008)). But the reasonableness of an employee's belief is evaluated objectively. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam); Jordan, 458 F.3d at 340-41. Thus, employees who oppose practices not made unlawful by Title VII do not engage in protected activity unless their belief that the practice was unlawful under the Act is objectively reasonable. Breeden, 532 U.S. at 270. Unlike opposition, when the protected activity alleged is participation in Title VII proceedings, that activity is protected regardless of whether the activity is reasonable. Cumbie, 302 F. App'x at 194 (citing Glover v. S.C. Law Enforcement Div., 170 F.3d 411, 413-15 (4th Cir. 1999)).

Williams initially alleged both opposition and participation as the protected activity underlying her retaliation claim. At oral argument, however, her counsel conceded she had no evidence of retaliation resulting from her participation in Title VII proceedings. In fact, Williams did not file her EEOC charge of discrimination until November 9, 2007. (Complaint, ECF No. 1, ¶ 3). She amended the charge after her firing on November 28, 2007, and Gold Key's first notice of any charge arrived November 30, 2007. (Complaint, ¶ 4, Reinhardt Dec. ¶ 27). Williams first met with the EEOC on October 24, 2007, but she testified she did not tell Reinhardt, Finwall or any other member of Gold Key's management, each of whom denied knowing of the EEOC's involvement until after Williams was let go. (Williams Dep., pp. 55-56). Because no adverse employment action followed the Company's notice of Williams' participation in Title VII proceedings, she has failed to demonstrate a material issue for trial on that issue.

Primarily, Williams argues her internal complaint about the Griffin slap opposed conduct made unlawful by Title VII and was therefore protected activity. The specific unlawful practice Williams alleges to have opposed is sexual harassment, although her written complaint to Gold Key did not identify it as such.

Sexual harassment is a form of sex discrimination actionable under Title VII "only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." Breeden, 532 U.S. at 270. Severe harassing conduct produces a "constructive alteration in the terms or conditions of employment." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998). Whether conduct is sufficiently hostile or abusive depends upon all the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Jordan, 458 F.3d at 339 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not constitute sexual harassment. Faragher, 524 U.S. at 788 (citations omitted).

The single incident underlying Williams' internal complaint is not so severe or pervasive as to constructively alter the conditions of her employment or create an abusive environment. Importantly, she has alleged only one incident of inappropriate behavior by her supervisor, Griffin. Although her awkwardly-worded written complaint purports to describe a series of events, her testimony was unequivocal on this point. She denied that she had any prior problems with Griffin, or that she had ever witnessed him behaving inappropriately towards others. She acknowledged that the slap was not sexual in nature, nor meant to cause her physical harm. She also produced no evidence that it did cause her harm. She did testify that she did not believe

Griffin would have touched a male representative in the same way, but her subjective view on this point is insufficient to raise the isolated incident to actionable conduct.

Williams does not really dispute that the severity of the conduct is objectively insufficient to constitute sexual harassment. Instead, she contends that Gold Key is estopped to argue that her complaint was not protected activity because the Company treated it seriously, by investigating it as a charge of harassment, and disciplining Griffin for his admitted conduct. While the employer's characterization of the complaint may be relevant in determining whether Williams' subjective belief was reasonable, it is not dispositive of that inquiry. Courts routinely find no protected activity even when internal reports lead to intensive internal scrutiny. See Martin v. Wyndham Vacation Resorts, No. 4:09cv589 (unpublished), 2011 U.S. Dist. LEXIS 26721 (D.S.C. February 7, 2011) (investigation resulted in directing employees to stop intimate touching which plaintiff found offensive); Young v. H.P. Enter. Servs., LLC, No. 1:10cv1096 (unpublished), 2011 U.S. Dist. LEXIS 99777 (E.D. Va. September 6, 2011) (plaintiffs report of a shove by a co-worker was not protected activity despite leading to a lengthy internal investigation). To rule otherwise would discourage employers from investigating and correcting inappropriate behavior regardless of whether the behavior amounted to an unlawful employment practice of the type Title VII prohibits. Title VII is not a code of general civility in the workplace. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Moreover, Gold Key's management carefully avoided characterizing Williams' complaints. While reiterating its general policy against sexual harassment, the Company's investigations described Williams' charge against Griffin in neutral language. Contrary to Williams' argument that Gold Key agreed Griffin's conduct was unlawful, the letter summarizing the Company's investigation expressly concluded that, "while inappropriate," it was "not actionable." (ECF No. 21-6, p. 3).

Because no reasonable juror could conclude the isolated incident Williams complained of was sexual harassment prohibited by Title VII, her internal complaint was not protected activity and she cannot establish the first element of a prima facie case of retaliation.

Had Williams established a prima facie case of retaliation, Gold Key would nonetheless be entitled to summary judgment, because the evidence in the summary judgment record establishes that Williams was fired for repeated unexcused absences, and she has failed to introduce sufficient evidence to show the Company's justification is "unworthy of credence." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981). When a plaintiff lacks direct evidence of retaliation, they may attempt to prove retaliation using the McDonnnell Douglas burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973); Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation. If established, the burden shifts to the employer to offer a legitimate, non-retaliatory reason for the adverse action. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). If the employer establishes a legitimate, non-retaliatory reason for the action, the Plaintiff must produce sufficient evidence to show the employer's reason is pretextual. This requires a "showing that the 'explanation is unworthy of credence' or . . . offering other forms of circumstantial evidence sufficiently probative of [retaliation]." Id. at 212 (quoting Mereish, 359 F.3d at 336).

Here, Gold Key has established a legitimate, non-retaliatory reason for Williams' termination. Specifically, the Company produced evidence to establish that Williams was repeatedly absent from work, and on three consecutive days in November 2007, she was absent without calling to report her unexpected absence. At the time, Company policy required a

telephone call at least two hours before a scheduled shift. (Reinhardt Dec., ¶¶ 22-23, Ex. 2). Williams has not disputed that she did not call in advance, or that she was absent on the days indicated. (Williams Dep., pp. 53-54).

Williams has attempted to rebut the employer's proffered reason for her termination on two fronts. First, she has argued that her several absences were excused as a result of previously-scheduled medical treatment and a doctor's note, which she apparently did not present. In substance, Williams claims that her note, and conversations with her supervisor, Griffin, establish that her absences were not a basis for termination and that Gold Key's proffered reason for her firing is false.

Fourth Circuit precedent permits the plaintiff to establish pretext on the basis of a strong prima facie case "coupled with probative evidence that the employer's explanation is false." Price, 380 F.3d at 214 (quoting Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 2108 (2000)). Whether summary judgment is appropriate in such cases depends upon "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Reeves, 530 U.S. at 148-149, 120 S. Ct. at 2109. The Fourth Circuit has applied the Reeves methodology, in cases where the plaintiff has a strong prima facie case. Price, 380 F.3d at 214. Here, Williams cannot establish a prima facie case, nor is her evidence sufficient to rebut the employer's legitimate, non-retaliatory reason for her firing. It is undisputed that the doctor's note purporting to excuse Williams from work from October 24 to November 7 was never actually presented to Gold Key. Moreover, while the note describes Ms. Williams' unavailability for work the entire period, it is undisputed that she worked on both October 25 and October 27. In addition, she telephoned to

inquire about working the weekend road show on November 3 and 4. (Williams Dep., p. 54). The reason she did not work the road show was not because of any illness or inability, but because Company policy precluded sales associates from working the special event unless they had worked the entire preceding week. (Reinhardt Dec., ¶¶ 21-22). All of these facts are undisputed, yet Williams contends that Gold Key's reason for firing her was pretextual on the basis of an alleged conversation with her supervisor, Griffin, in which he generally told her "not to worry," but to "get well" and return to work when she was able. Griffin does not recall this conversation. Most importantly, however, Reinhardt testified without dispute that Griffin advised her that Williams was expected back on November 5. Contemporaneous records also establish Reinhardt's belief that Williams was due to return November 5, and her failure to report, call or otherwise communicate her intentions, led to her firing. Even accepting Williams' statement as true that she believed Griffin had excused her generally, it is insufficient to raise an issue for trial on the issue of pretext. Griffin did not make the decision to terminate Williams, Reinhardt did. If Reinhardt was mistaken about the status of Williams' extended absence, her mistake is still no evidence of discrimination. Gibson v. Fluor Daniel Servs. Corp., 281 F. App'x 177, 178-80 (4th Cir. 2008) (supervisors honest but mistaken belief in misconduct is not proof of discriminatory motive).

Williams' second challenge to Gold Key's proffered reason for the firing relates to the Reinhardt-Finwall emails which the two managers exchanged immediately after Williams' complaint. The emails, Williams argues, demonstrate that Reinhardt was skeptical of her motive for reporting the Griffin incident and singled her out for scrutiny as a result of her complaint, casting doubt on the legitimacy of Gold Key's motive.

The primary problem with this argument is it is inconsistent with the timeline of Reinhardt's action. Reinhardt testified that she requested scrutiny of Williams' attendance on August 30, but did not learn of her complaint against Griffin until August 31. (Supp. Reinhardt Dec., ECF No. 22-1, ¶ 3). Both dates are confirmed by separate contemporaneous emails. (ECF No. 21-2; ECF No. 22-1, p. 4). In addition, while Williams' attendance issues were documented differently, Williams has produced no evidence that other similarly situated employees were treated differently with regard to the consequences. As a result, she cannot establish a material issue for trial on whether Gold Key's proffered for terminating her reason was pretextual.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment and ORDERS the case DISMISSED with prejudice. The Clerk is DIRECTED to enter judgment in favor of the Defendant and to deliver a copy of this Opinion to all Counsel of Record in this case.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

September 25, 2012